UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

THE GOWANUS DREDGERS,
d/b/a Gowanus Dredgers Canoe Club,

                Plaintiff,

                **MEMORANDUM & ORDER**

       v.                11-CV-5985 (PKC)

ERIK BAARD,

                Defendant.

------------------------------------------------------------------x

PAMELA K. CHEN, United States District Judge:

       Pending before the Court is Plaintiff The Gowanus Dredgers' motion for summary judgment against pro se Defendant Erik Baard on its claims for trademark infringement under Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), common law unfair competition, and New York's unfair competition laws (N.Y. Gen. Bus Law §§ 349 and 350).  Plaintiff's claims arise from Baard's allegedly unauthorized use on a social media website of the logo and name (the "Trademark") of the Long Island City Community Boathouse ("LIC Community Boathouse" or "Boathouse").[1]  The Trademark consists of a circular logo featuring two boats and a wave graphic in the foreground, a depiction of the 59th Street Bridge in the background, and the text "L.I.C. Community Boathouse" and "www.licboathouse.org" encircling these images. (*See* Dkt. 54-3 at ECF 23.)[2]  An example of the logo appears below:

---

[1] The parties' briefs focus almost exclusively on the use of the logo.  However, because Plaintiff also asserts trademark infringement of the LIC Community Boathouse name, the Court considers them in tandem, but refers only to the Trademark.

[2] Citations to "ECF" reference the pagination of the Court's Electronic Court Filing system, and not the document's internal pagination.



Because of the existence of genuine issues of fact regarding Plaintiff's standing to bring this lawsuit, its motion for summary judgment is denied.

*BACKGROUND*

The Court has taken the following facts from the pleadings and the submissions of the parties in connection with the summary judgment motion and all accompanying exhibits. Where the Court cites to the Joint 56.1 Statement ("St.") (Dkt. 64-1), the Court has reviewed the underlying evidence cited and finds the statement to be uncontroverted.[3]

Gowanus Dredgers is a registered 501(c)(3) charitable organization founded in 1999 and based in Brooklyn, New York. It was established to raise awareness of environmental issues affecting the Gowanus waterfront in Brooklyn and the broader New York/New Jersey harbor area. (St. ¶¶ 1, 4.) Gowanus Dredgers is organized in such a way that it conducts many of its operations, both public and private, through various "Activity Committees." (St. ¶ 8.)[4]

---

[3] Additionally, although the Joint Rule 56.1 Statement refers to specific record citations to support its statements, the Court cites to the Rule 56.1 statement, rather than the underlying record citation, for ease of reference.

[4] A core dispute is whether the LIC Community Boathouse is one such Activity Committee or whether the Boathouse operates independently of the Gowanus Dredgers. (Dkt. 58-2 ¶ 5.)

Baard principally founded the LIC Community Boathouse in 2003, and later "affiliated" it with the Gowanus Dredgers. (Dkt. 58-2 ¶ 10.) After affiliation, Baard became secretary of the Gowanus Dredgers board of directors. (Dkt. 54-3 at 11.)[5] For reasons that are unclear, Baard resigned from the leadership of the LIC Community Boathouse and the Gowanus Dredgers in 2008, but thereafter remained active as a volunteer with the Boathouse. (Dkt. 58-2 ¶ 12; St. ¶ 22.) In July 2011, however, the Gowanus Dredgers terminated Baard's membership in the Gowanus Dredgers and the LIC Community Boathouse. (Dkt. 54-3 ¶ 13.) Baard was expelled ostensibly as a result of complaints of misconduct, including unauthorized use of Gowanus Dredgers equipment, falsely advertising paddling events as being sponsored by the Boathouse, and threatening and harassing volunteers and members of the Boathouse Steering Council and Activity Committee. (Dkt. 54-3 ¶ 13.) The merits of those allegations and accusations, and the underlying reasons for Baard's dismissal from the organizations, are irrelevant to resolution of this motion.[6]

After his expulsion from the Gowanus Dredgers and LIC Community Boathouse, Baard continued to represent himself as owning or being involved in the Boathouse, including advertising events in the name of the Boathouse and maintaining a Facebook page that contained the Boathouse's logo and its name in the title of the page. (*See, e.g.*, St. ¶¶ 27–29.)

The Gowanus Dredgers filed suit on December 8, 2011, seeking to enjoin Baard from holding himself out to be affiliated with the Boathouse and from using the Trademark in any

---

[5] Baard asserts that he did so, at the urging of Owen Foote, Gowanus Dredgers's treasurer, in order to "motivate [the Boathouse's] compliance with insurance requirements." (Dkt. 64-1 at ECF 52.)

[6] Indeed, they are irrelevant to the ultimate outcome of this case. Baard does not make a counterclaim based on his dismissal from the Boathouse, and this action is limited to the trademark ownership and infringement claims. (*See* Dkt. 18.)

form.  (Dkt. 1.)  According to Plaintiff, Baard continues to use the Trademark on his Facebook

page and to hold himself out as having "some ownership in the LIC Community Boathouse

name, and some affiliation with the LIC Community Boathouse" in emails and elsewhere.  (Dkt.

54-3 ¶¶12–13; Dkt. 54-3 (Exhibit 2).)[7]  Plaintiff alleges that Baard's conduct damages the

Gowanus Dredgers by causing customer confusion, resulting in its inability to control its

reputation.  (Dkt. 54-2 at 7.)

In the present motion, Plaintiff seeks summary judgment enjoining Baard from using the

Trademark and from holding himself out as being affiliated in any way with the Boathouse or

Gowanus Dredgers.  (Dkts. 53–54.)

On November 7, 2013, the Court heard argument from the parties regarding Plaintiff's

motion.  At the hearing, the Court noted that there was inadequate evidence in the record to

conclude that Gowanus Dredgers owned or controlled the assets of the LIC Community

Boathouse, including the Trademark, and therefore it was questionable whether Gowanus

Dredgers had standing to sue for infringement of the Trademark.  Counsel for Plaintiff indicated

that Plaintiff would submit a supplemental declaration in further support of the motion, swearing

to additional facts to support the Boathouse's authority to sue for infringement of the Trademark.

The Court is in receipt of Plaintiff's supplemental submission, as well as Defendant Baard's

response thereto.  (Dkts. 68, 69.)  The Court also is in receipt of a further supplemental

submission of Gowanus Dredgers, purporting to contain an instance of consumer confusion as to

---

[7] Baard previously used the name of the Boathouse as the "banner" of his Facebook page.  (Dkt. 54-4 at ECF 37.)  However, Baard's Facebook page currently does not use the Trademark or the Boathouse's name as its banner.  Baard has renamed the page "LIC Community Boathouse Founder."  *See id.*; *see also* https://www.facebook.com/LICCommunityBoathouseFounder (last visited (Nov. 7, 2013).  Although Baard is not currently using the Trademark as a banner for his Facebook page, the Trademark appears in "wall posts" elsewhere on the page.  *See id.*

the ownership of Baard's Facebook page, and Baard's response to that supplemental submission. (Dkts. 70, 71.)

*SUMMARY JUDGMENT STANDARD*

"Summary judgment is appropriate where there are no genuine disputes concerning any material facts, and where the moving party is entitled to judgment as a matter of law." *Harvis Trien & Beck, P.C. v. Fed. Home Loan Mortgage Corp. (In re Blackwood Assocs., L.P.)*, 153 F.3d 61, 67 (2d Cir. 1998) (*citing* Fed. R. Civ. Proc. 56(c)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

"The burden of showing the absence of any genuine dispute as to a material fact rests on the party seeking summary judgment." *McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir.1997); *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). "In assessing the record to determine whether there is a genuine issue to be tried as to any material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *McLee*, 109 F.3d at 134.

"Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact, once such a showing is made, the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'" *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir.2000) (quoting *Anderson,* 477 U.S. at 256). "Mere conclusory allegations or denials will not suffice," *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986), and a plaintiff opposing summary judgment must offer "some hard evidence showing that its version of the events is not wholly fanciful." *Miner v. Clinton Cnty., New York*, 541 F.3d 464, 471 (2d Cir. 2008). It is within this framework that the Court addresses the present summary judgment motion.

The Lanham Act provides for civil liability for:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities . . . .

15 U.S.C. § 1125. Before reaching the merits of Gowanus Dredgers' trademark infringement claims, however, two issues are central to the resolution of the present motion: (1) who owns the Trademark; and (2) if the Boathouse owns the Trademark, whether Gowanus Dredgers has standing to assert a violation of its trademark rights.

I.      Ownership of the Trademark

The Trademark is not registered with the United States Patent and Trademark Office ("PTO"). There is no presumption of ownership or validity of a trademark in the absence of such federal registration. *See Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 196 (1985) ("registration provides prima facie evidence of the registrant's exclusive right to use the mark in commerce"); *Alfred Schneier Co. v. Bramson*, 16 F. Supp. 493, 494 (E.D.N.Y. 1936) ("The fact that the Patent Office permitted the registration of the trade-mark gives a very definite presumption both of the ownership of the trade-mark and the validity thereof."); *see also* J. Thomas McCarthy, *Trademarks and Unfair Competition*, (hereinafter, "McCarthy") § 16:19 ("A trademark registration on the federal Principal Register is at least prima facie evidence of the

registrant's ownership of the mark.").  Accordingly, here there is no presumption of ownership or validity of the Trademark.  However, the parties do not dispute that the Trademark is valid and is entitled to protection under United States trademark laws; their dispute is over who owns the Trademark.

      a.  <u>Protectability of the Trademark</u>

Although the parties do not dispute the "protectability" of the Trademark, the Court first must determine whether the Boathouse's logo and name are indeed subject to trademark protection.  "[T]o succeed in a Lanham Act suit for trademark infringement, a plaintiff has two obstacles to overcome: the plaintiff must prove that its mark is entitled to protection and, even more important, that the defendant's use of its own mark will likely cause confusion with plaintiff's mark."  *Star Indus, Inc. v. Bacardi & Co. Ltd.*, 412 F.3d 373, 381 (2d Cir. 2005) (citing *Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072, 1074 (2d Cir. 1993)).

First, even though the Trademark is unregistered, it is entitled to protection as a trademark if it qualifies for registration as a trademark.  *Id.* at 381.  "To qualify for registration a mark must be sufficiently 'distinctive' to distinguish the registrant's goods from those of others." *Id.*  "The mark may be 'inherently distinctive' if its intrinsic nature serves to identify its particular source."  *Id.*  There is no question that the mark, which identifies the LIC Community Boathouse by name and contains the Boathouse's website address, www.licboathouse.org, is "inherently distinctive" because it identifies the Boathouse as the source of anything to which the mark is attached.  Accordingly, the Trademark is protectable as a trademark qualifying for protection under the Lanham Act.  Again, the parties do not dispute this conclusion.

### b. Ownership of the Trademark

The parties do, however, vigorously dispute ownership of the Trademark. Baard argues that he, as the founder of the LIC Community Boathouse and the creator of the Trademark itself, is the owner. (Dkt. 59 at 23.) The Gowanus Dredgers maintains that it is the owner of the Trademark because, *inter alia*, the Trademark is registered to the LIC Community Boathouse, of which Baard no longer is a member and which is essentially a "subsidiary" of the Gowanus Dredgers, which owns or controls all of the Boathouse's assets. (*See* Dkt. 54-2 at 5.) Although the parties' briefs make hardly a reference to the issue of *who* actually owns the Trademark, the evidence with respect to ownership is clear.

It generally is established that federal trademarks are acquired through *use* of the trademark, not registration of it. *See Time, Inc. v. Peterson Pub. Co. L.L.C.*, 173 F.3d 113, 118 (2d Cir. 1999) (citing *La Societe Anonyme des Parfums LeGallon v. Jean Patou, Inc.*, 495 F.2d 1265, 1270 n.5 (2d Cir. 1974)) ("As a general matter, registration creates no substantive trademark rights against infringement beyond the common law rights acquired through use of the mark."). Accordingly, common law principles dictate ownership of the Trademark.

### c. Common Law Priority in the Trademark

Although neither party has registered the Trademark with the PTO, both Baard and Owen Foote, treasurer of Gowanus Dredgers, on behalf of the LIC Community Boathouse, have separately registered the Trademark with the New York State Department of State, which regulates trademarks registered in New York. (Dkt. 54-3 at ECF 22 (Foote); Dkt. 60 at ECF 7 (Baard).) Although trademark registration with the PTO creates a presumption of ownership, *Bramson*, 16 F. Supp. at 494, state registration creates no such presumption in federal court, *see, e.g.*, *Neva-Wet Corp. of Am. v. Never Wet Processing Corp.*, 277 N.Y. 163 (1938) ("Without use

in connection with a business, trade-marks, of course, are not subject to exclusive appropriation merely because of priority of registration."). Even in the absence of a formal presumption of ownership, the probative value of the state registrations is particularly limited here. Both trademark registrations postdate the commencement of this lawsuit. (Dkt. 54-3 at ECF 22; Dkt. 60 at ECF 7.) The incentives of both parties to belatedly register the Trademark in an effort to claim ownership are obvious. Accordingly, the Court disregards the state registrations in determining ownership of the Trademark.

Trademarks distinguish the source of goods or services, and thereby indicate the owner of the mark as the source of the goods or services. *See* McCarthy § 3:1. Consequently, trademarks are owned by the business entity that is the source of the goods and/or services, rather than the creator of the mark. *Liebowitz v. Elsevier Science Ltd.*, 927 F. Supp. 688, 695 (S.D.N.Y. 1996) ("whoever controls the quality of the goods marketed under the trademark is the source and therefore owns the trademark") (citing *In re Polar Music Int. AB*, 714 F.2d 1567, 1571 (Fed. Cir. 1983)); *see generally Excell Consumer Prods Ltd. v. Smart Candle LLC*, 2013 WL 4828581, at *23 (S.D.N.Y. Sept. 10, 2013) (trademarks are intended to "signify that all goods bearing the trademark come from or are controlled by a single, albeit anonymous, source"); McCarthy § 16.40 ("It is fundamental that a trademark or service mark identifies a *single*, albeit anonymous, source."). Long ago, the Supreme Court expressly excised the concept of invention from trademarks:

> The ordinary trademark has no necessary relation to invention or discovery. The trademark recognized by the common law is generally the growth of a considerable period of use, rather than a sudden invention. . . . The trademark may be and, generally, is, the adoption of something already in existence as the distinctive symbol of the party using it. At common law the exclusive right to it grows out of the use of it, and not its mere adoption [or invention] . . . It requires no fancy or imagination, no genius, no laborious thought. It is simply founded on priority of appropriation.

*Id.* at § 16.11 (citing *Trade-Mark Cases*, 100 U.S. 82, 94 (1879)). "Unlike patent law, rights in trademarks are not gained through discovery or invention of the mark, *but only through actual usage*. Trademark priority is not granted to the person who was first to conceive of the idea of using a given symbol as a mark." *Id.* at § 16.11 (emphasis added). "Trademark law is concerned with protection of the symbols, elements or devices used to identify a product in the marketplace and to prevent confusion as to its source. It does not protect the content of a creative work of artistic expression as a trademark for itself." *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56, 63 (2d Cir. 2000). Accordingly, the inventor or creator of a trademark is not necessarily its owner, and indeed often is not.

Here, the evidence shows, and it is undisputed, that Baard created the Trademark along with his colleague, Steve Sanford. (Dkt. 60 at ECF 2.) It likewise is clear that the Trademark was created *for* the LIC Community Boathouse. (Dkt. 60 at ECF 2) ("Regarding creation of the logo *for* the LIC Community Boathouse . . . ."). The Trademark was not created for use by an individual, such as Baard, Sanford, or anyone else, but instead was designed to indicate to the general public that, wherever that logo should appear, the source of those goods or services is the LIC Community Boathouse.

Priority in time with respect to use of a trademark affects an entity's claim of ownership of the trademark. Ownership of a trademark inures to the entity that *first* uses it in the course of commerce. *See Modular Cinemas of Am., Inc. v. Mini Cinemas Corp.*, 348 F. Supp. 578, 581 (S.D.N.Y. 1972) ("It is an axiomatic principle of trademark law that priority in adoption and actual use of a name or designation, as a trademark, is the essential criterion upon which ownership is based.") (citing *Hanover Star Milling Co. v. Metcalf*, 240 U.S. 403 (1916)). "It is this priority in time of trademark use, in commerce, which confers the quintessential right of

exclusiveness and hence 'ownership' upon the user." *Id.*; *see also Blue Planet Software, Inc. v. Games Int'l, LLC*, 334 F. Supp. 2d 425, 437 (S.D.N.Y. 2004) ("trademark rights attach based upon use of the mark in commerce"). It is not readily apparent from the parties' submissions when the LIC Community Boathouse began using the Trademark, and the record lacks direct evidence as to who first used the Trademark and when. At most, it can be inferred from the record that the Boathouse was the first to use it based on the undisputed fact that Baard created the Trademark at the time the Boathouse was organized. At a minimum, Plaintiff has failed to show that there is no disputed fact on this issue. Moreover, Plaintiff concedes that the Boathouse has used the Trademark. (Dkt. 58-5 at ECF 9 (Plaintiff's argument that "[i]t cannot be questioned that the Long Island City Community Boathouse has been using the LIC Community Boathouse name as a trademark. The name is on its boats; on its banner and logo used at events."); Dkt. 54-4 ¶¶ 7–8.) It also is undisputed that the Boathouse uses the Trademark, in the course of commerce[8], in connection with the advertisement of goods or services, *i.e.*, the community events and other activities of the LIC Community Boathouse. (*See* Dkts. 54-2 at 9; 54-4 at ECF 27.)

Despite asserting that the Trademark was used by *both* the Gowanus Dredgers *and* the Boathouse (Dkt. 58-5 at 5), the evidence relied upon by Plaintiff shows only that the Boathouse is using the name and Trademark (Dkt. 58-3 at ECF 3, 18-37). In fact, one of the photos offered by Plaintiff shows an individual wearing a Gowanus Dredgers t-shirt bearing a logo that appears to be different than the Trademark, and other photos show kayaks bearing the name

---

[8] The Lanham Act defines commerce as: "bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in the mark . . . . [A] mark shall be deemed to be in use in commerce . . . on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce . . . ." 15 U.S.C. § 1127; *see Buti v. Perosa, S.R.L.*, 139 F.3d 98, 102 (2d Cir. 1998).

"Metropolitan Waterfront Alliance" instead of "LICBOATHOUSE.ORG." (Dkt.58-3 at ECF 29, 31.) Thus, while there is no dispute as to the Boathouse's use of the Trademark, there is no evidence showing Plaintiff's use of the Trademark.

In sum, based on the undisputed evidence, Baard is not the owner of the Trademark; nor is the Gowanus Dredgers. The LIC Community Boathouse is the owner of the Trademark and thus may assert its rights against all who would infringe on its use, including Baard, the Trademark's inventor and the Boathouse's founder. However, as discussed *infra*, ownership of the Trademark is not the only basis for establishing standing to bring an infringement action.

The critical question then is whether the Gowanus Dredgers has standing to sue Baard for infringement of the Trademark based on its ownership of the Boathouse and/or its assets or based on any other theory, as discussed below.

II.     Standing to Sue under Lanham Act Section 43(a)

        a.    Trademark Standing Generally

In the case of federally registered trademarks, only the registrant has legal standing to sue for infringement of the trademark. *See* 15 U.S.C. § 1114(a) (an infringer "shall be liable in a civil action by the *registrant*") (emphasis added). Where the trademark is unregistered, the Lanham Act provides that an infringement action may be brought by "any person who believes that he or she is or is likely to be damaged" by an infringing act. 15 U.S.C. § 1125(a). The term "person" includes both natural persons and legal persons, which includes organizations such as the Gowanus Dredgers. 15 U.S.C. § 1127 (defining "person"). Despite the Lanham Act's broad language, courts, including the Second Circuit, have limited the plain language of Section 43(a), and have held that noncommercial plaintiffs and consumers do not have standing to sue. *See* McCarthy § 27:39; *Colligan v. Activities Club of N.Y., Ltd.*, 442 F.2d 686 (2d Cir. 1971)

(concluding that "Congress' purpose in enacting § 43(a) was to create a special and limited unfair competition remedy, virtually without regard for the interests of consumers generally and almost certainly without any consideration of consumer rights of action in particular") (internal citation omitted). Rather, to have standing to sue under section 43(a), "the plaintiff must show that it has a valid *commercial interest* in the mark that may be harmed by the alleged infringement." McCarthy § 32:12 n.6 (emphasis added) (citing *Nordco A.S. v. Ledes*, 95-CV-7753(RJW), 1997 WL 570546, at *3 (S.D.N.Y. Sept. 15, 1997) (holding that plaintiff "failed to produce evidence demonstrating that it has a commercial interest in the . . . trademark. . . . Nor has [plaintiff] pointed to any actual economic harm caused by [defendant's] use of the trademark in connection with its magazine. In the absence of such evidence, [plaintiff] cannot adequately support its [Lanham Act] claim")); *see also Berni v. Int'l Gourmet Restaurants of Am., Inc.*, 838 F.2d 642, 648 (2d Cir. 1988) ("standing to bring a section 43 claim requires the potential for a commercial or competitive injury").

      b.  <u>Ownership of the Boathouse</u>

Certainly, if Plaintiff directly owns and controls the Boathouse, it would have a commercial interest in the use of the Trademark through that ownership. But the parties' central dispute is whether the Gowanus Dredgers owns or controls the LIC Community Boathouse. Plaintiff contends that the LIC Community Boathouse is an "activity committee" of the Gowanus Dredgers that is governed according to the Gowanus Dredgers' by-laws (Dkt. 54-3 ¶ 9). Plaintiff also asserts that "[t]he assets of the LIC Community Boathouse are owned by the Gowanus Dredgers, and this, of course includes the name LIC Community Boathouse name [sic]." (Dkt. 54-2 at 5); *see also* (Dkt. 54-3 ¶ 16) ("The Gowanus Dredgers own the trademark *LIC Community Boathouse*"). Baard contests these points.

The primary evidence relied upon by Plaintiff to support its claim of ownership of the Boathouse's assets, including the Trademark, is that (1) it provides insurance to the Boathouse (St. ¶ 15); (2) the Boathouse is not its own 501(c)(3) organization, but instead operates as a "fiscal conduit" for fundraising, with all of the funds that it raises being transferred to the Gowanus Dredgers (St. ¶¶ 11, 13); (3) the Boathouse is an "Activity Committee" of the Gowanus Dredgers (St. ¶ 8)[9]; and (4) the boathouse operates according to the Gowanus Dredgers' by-laws, and accordingly is under the control of the Gowanus Dredgers' board of directors. (St. ¶¶ 17, 19.)

Baard counters these contentions with his own testimony, the testimony of volunteers and members of the community, and various documentary evidence showing that the Boathouse is an entity separate and apart from the Gowanus Dredgers. (*See, e.g.*, St. ¶¶ 8–14 & accompanying exhibits.) For example, Baard's evidence shows that a grant from the Citizens Committee for New York City was awarded to the Boathouse, with Gowanus "serv[ing] as [the Boathouse's] fiscal sponsor for this award." (Dkt. 60-1 at ECF 19 (Exhibit 13).) A "Citibank Community Board" grant also was awarded directly to the Boathouse, without any reference to the Gowanus Dredgers owning the Boathouse (Dkt. 60-1 at ECF 25 (Exhibit 14)) (although that award does reference the "Gowanus Dredgers Canoe Club, fiscal conduit[.]").[10]

---

[9] Notably, the evidence Plaintiff cites in support of this contention are the statements of Gowanus Dredgers treasurer Foote (Dkt. 58-2 at ECF 3–4), a Gowanus Dredgers board member, who became the Chairman of the Boathouse after the initiation of this lawsuit (Dkt. 58-4 at ECF 1–2), and a Boathouse Steering Committee member (Dkt. 58-3 at ECF 1–2).

[10] At the same time, some of Baard's evidence supports Plaintiff's claim of ownership. For example, Baard offers evidence of a third party paying funds directly to the Gowanus Dredgers "for donation to Long Island City Boathouse" in exchange for Baard's appearance as a keynote speaker at an event. (Dkt. 60-1 at ECF 35 (Exhibit 15).)

Most tellingly, however, and as Baard points out, Plaintiff has submitted no contract, agreement, board minutes, resolution, discussion, letter, correspondence, authorization, allegations of an oral contract or agreement, or any other direct evidence showing that there was an agreement that the Gowanus Dredgers would acquire the assets of the Boathouse. (*See* Dkt. 59 at 2 (Baard's statement that he "never signed an agreement handing rights and assets, or control, to the Gowanus Dredgers Canoe Club. Instead [he] had an oral agreement of voluntary affiliation for the LIC Community Boathouse[.]"); St. ¶ 10 (Baard's assertion that "[a]ffiliation does not equal handing over organization ownership or ownership of intellectual properties.")). Although Plaintiff has submitted affidavits from the LIC Community Boathouse's Chairman[11] and a Boathouse Steering Committee member in support of its motion, these affidavits leave unanswered the fundamental question of whether the Gowanus Dredgers owns the assets of the Boathouse. The affidavits also failed to indicate whether the Boathouse could sever its affiliation with the Gowanus Dredgers and operate independently or switch its affiliation to another canoe club.[12] At the motion hearing, however, Plaintiff's counsel acknowledged that the Boathouse could disaffiliate from the Gowanus Dredgers should it wish.[13] The affidavits also do not answer questions about the structure and governance of the Boathouse, such as how the Boathouse Steering Committee members are chosen and by whom, and what powers the Steering Committee members have with respect to the Boathouse's activities, its membership and its

---

[11] Notably, the Boathouse Chairman has only occupied that position since April 2013, *i.e.*, after the filing of this lawsuit.

[12] In fact, the Boathouse Chairman's statement that the Gowanus Dredgers is the "umbrella organization" to which the Boathouse "belongs" suggests that the two entities are separate, even if they are closely affiliated. (Dkt. 58-4 at ECF 2.)

[13] As of the time of this order, the hearing transcript is unavailable.

relationship(s) with other organizations. Moreover, Gowanus Dredgers' own website lists the Boathouse in a manner that implies that it is a separate entity. *See* (Dkt. 66 at ECF 14) (listing the "Long Island City Community Boathouse" among a list of organizations and individuals in a section stating "Please support these companies who have donated materials, services and space").[14]

However the Gowanus Dredgers may perceive its relationship with the Boathouse, the evidence is insufficient to establish, as a matter of law, that it owns the Boathouse's assets, including the Trademark, or that Gowanus Dredgers otherwise owns and operates the Boathouse. Moreover, Gowanus Dredgers' legal arguments regarding ownership are equally unavailing.

First, Plaintiff asserts ownership over the Boathouse by showing that it is a "fiscal conduit" for donations to the Boathouse. (St. ¶¶ 11–13.) Gowanus Dredgers sets forth no authority, and the Court finds none, which supports the theory that a "fiscal conduit" for a related organization thereby gains control over the assets of the organization for which it raises money. And indeed, it cannot be the case that merely by serving as a fundraising conduit one organization gains control of another's assets.

Next, Plaintiff claims ownership of the Boathouse on the basis that the Boathouse operates according to the Gowanus Dredgers by-laws. (St. ¶ 17.) Again, Gowanus Dredgers cites no authority supporting such a conclusion. Indeed, the Court is unaware of any principle of law holding that, merely by operation of following an organization's by-laws, an organization's assets become the property of another organization.

---

[14] The webpage, which is dated October 28, 2013, may be outdated and obsolete; for one, it still names Erik Baard as a supporter. However, regardless of whether the page is outdated, the fact that the Gowanus Dredgers at least at one point in the recent past considered the Boathouse to be a separate entity is telling. *See Our Dedicated Sponsors*, http://www.gowanuscanal.org/sponsors.html (last visited December 17, 2013).

Lastly, Plaintiff asserts that it owns the Boathouse because it provides the Boathouse insurance. (Dkt. 58-5 at 2–3; Dkt. 64 at 7–8.) Again, Plaintiff cites no authority for the proposition that an organization gains control over the assets of another affiliated organization merely by insuring the assets of that organization.[15] Regardless of Plaintiff's belief that it owns the Boathouse, insuring the organization or its property does not confer ownership rights that do not independently exist.[16]

Among the most probative evidence, however, is Plaintiff's supplemental submission in response to the Court's comments at the November 7 motion hearing. Plaintiff's supplemental submission features the supplemental declaration of John McGarvey, the self-described chair of the LIC Community Boathouse. On the central question posed by the Court at the hearing, to wit, what is the basis for Plaintiff's authority to sue on behalf of the Boathouse for infringement of the Trademark, McGarvey states:

> I am personally aware that [the] Board of The Gowanus Dredgers has the full
> support of the leadership of the LIC Community Boathouse in assuring the
> trademarks of the LIC Community Boathouse are fully protected; and the LIC
> Community Boathouse leadership agrees The Gowanus Dredgers has the full
> control over the use of the trademarks of The LIC Community Boathouse and
> currently has all the rights necessary to pursue infringers of the trademarks of The

---

[15] In fact, rather than demonstrating ownership over the property, Plaintiff's provision of insurance for the Boathouse may be invalid, as one cannot insure property it does not own under New York law. *See, e.g.*, *Etterle v. Excelsior Ins. Co. of N.Y.*, 74 A.D.2d 436 (1980) ("the lack of an insurable interest in the property insured renders the property insurance void and unenforceable").

[16] The authorities cited by Plaintiff are inapposite. The cases Plaintiff cites only stand for the proposition that, to have an insurable interest in property, a party must own the property. (*See* Dkt. 64 at 7–8) ("New York law requires anyone insuring property to have an insurable interest in such property.") No case cited supports the proposition that a party may come to own property *by way of insuring it*. *See Nat'l Filtering Oil Co. v. Citizen's Ins. Co. of Mo.*, 106 N.Y. 535, 541 (1887) (holding that if "there be a right in or against the property which some court will enforce upon the property . . . [the party] has an insurable interest").

LIC Community Boathouse.

Dkt. 68-1 ¶ 3.)  This is inadequate.  Nowhere in McGarvey's three paragraph declaration does McGarvey provide an adequate factual basis for his "personal[] aware[ness]" that Plaintiff has the full support of the Boathouse in enforcing the Boathouse's trademarks.  McGarvey likewise does not identify who the "leadership of The LIC Community Boathouse" is.  Nor does McGarvey set forth what the leadership's "full support" consists of.  Moreover, McGarvey does not attest to any meeting, conversation, discussion, agreement, steering committee resolution, or any other factual basis demonstrating Plaintiff's authority to assert rights in the Boathouse's trademarks.  Nor does McGarvey or another Plaintiff's representative submit evidence such as minutes of a board or general membership meeting, a resolution, or other indication that Plaintiff does, in fact, have the formal authority granted to it by the Boathouse to sue to protect the Boathouse's trademark.

McGarvey's legally conclusory averments are unavailing.  McGarvey simply repeats the legal conclusion that "The LIC Community Boathouse leadership agrees The Gowanus Dredgers has the full control over the use of the trademarks of The LIC Community Boathouse and currently has all the rights necessary to pursue infringers of the trademarks of The LIC Community Boathouse."  (Dkt. 68-1 ¶.)  Again, whatever McGarvey's belief of what Plaintiff's rights are as to asserting rights in the Trademark, that does not make it so.

In sum, although the Gowanus Dredgers and the Boathouse clearly have a close affiliation that bears some of the hallmarks of control and/or ownership,  Plaintiff has failed to establish that there are no genuine issues of fact regarding the Gowanus Dredgers' claimed ownership of the Boathouse's assets, including, in particular, the Trademark.  It may indeed be the case that the Gowanus Dredgers owns these assets.  However, the record before the Court is

insufficient to conclude that it does, and Baard has adduced sufficient evidence to raise a genuine issue of fact with respect to ownership. This lack of specific evidence, particularly in response to the colloquy at the hearing, leads the Court to believe that perhaps Plaintiff does not have the authority to enforce rights in the Trademark on behalf of the Boathouse. The lack of specific evidence attesting to the nature of the relationship between the Boathouse and the Gowanus Dredgers is conspicuous.[17] In any event, as it must, the Court construes the facts in the light most favorable to the nonmoving party, who does not bear the ultimate burden of persuasion, and finds that Plaintiff has failed to establish that there is no genuine issue of fact as to whether Plaintiff has the authority to sue on behalf of the Boathouse for infringement of its Trademark. *See Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir. 2009) ("Summary judgment is warranted when, after construing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in its favor, there is no genuine issue as to any material fact.").

c. Plaintiff's Standing under Section 43(a)

Notwithstanding Plaintiff's failure to establish its ownership of the Trademark, it may still have standing with respect to this infringement action. Plaintiff may have standing under Section 43(a) of the Lanham Act based on other factors. Although Plaintiff has waived its argument with respect to Section 43(a) by not making it, the Court addresses it *sua sponte*.

The Second Circuit has set forth three criteria for Section 43(a) standing. First, the plaintiff must be a "commercial party" as opposed to a consumer or private citizen. *Colligan v. Activities Club of New York, Ltd.*, 442 F.2d 686, 692 (2d Cir. 1971). Second, "at a minimum, standing to bring a section 43 claim requires the potential for a commercial or competitive

---

[17] Equally conspicuous is the absence of the Boathouse as a plaintiff in this action despite the Plaintiff counsel's suggestion at the November 7, 2013 hearing that he could have filed this lawsuit on behalf of the Boathouse itself.

injury." *Bangkok Crafts Corp. v. Capitolo di San Pietro in Vaticano*, 03-CV-0015(RWS), 2005 WL 1595285, at *5 S.D.N.Y. July 6, 2005) (quoting *PPX*, 746 F.2d at 125).  Third, the plaintiff "must have a 'reasonable interest to be protected' from the alleged violation" of the Lanham Act. *Model Imperial Supply Co., Inc. v. Westwind Cosmetics, Inc.*, 808 F. Supp. 943, 945 (E.D.N.Y. 1992) (citing *PPX Enters., Inc. v. Audiofidelity, Inc.*, 746 F.2d 120, 125 (2d Cir. 1984)).  "The reasonable interest test at a minimum requires that a § 43(a) plaintiff has a 'pecuniary stake' in the sale of a good or service bearing a disputed trademark, tradedress, name or designation of origin or quality." *Id.* (citing *PPX*, 746 F.2d at 125).  "A pecuniary stake exists when a plaintiff earns money every time said good or service is sold." *Id.* (citing *PPX*, 746 F.2d at 125).

Here, the first prong of the test is established because a non-profit organization, such as the Gowanus Dredgers, qualifies as a "commercial party." *Nat'l Artists Mgmt. Co. v. Weaving*, 769 F. Supp. 1224, 1232 (S.D.N.Y. 1994).  However, Plaintiff has failed to establish the second and third prongs.  There is insufficient evidence that the Gowanus Dredgers has the requisite commercial interest, by way of a pecuniary stake in the Trademark, because there is no evidence that the organization is involved in or earns money from the sale or goods or services.  *See Model Imperial Supply Co., Inc.*, 808 F. Supp. at 945.  Plaintiff does not allege that it offers any "goods or services" in a fashion that constitutes a pecuniary stake.  Nor does, or could, it allege any pecuniary interest arising out of the free boating, educational, and outreach services it offers to the community.  The Second Circuit is clear that such pecuniary stake or commercial interest is necessary to create standing.  *See, e.g.*, *Berni*, 838 F.2d at 648; *PPX Enters.*, 746 F.2d at 124–25.

Perhaps the closest Plaintiff could come to showing a direct pecuniary interest is donations from the community to support the Gowanus Dredgers and/or the Boathouse and their

activities.  Although Plaintiff does not make this argument, the Gowanus Dredgers theoretically could be financially impacted by a potential donor's mistaken belief that Baard's webpage or activities are officially sanctioned by the Boathouse, causing the donor to give money to Baard instead of the Gowanus Dredgers or the Boathouse.  *See, e.g.*, *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 114–15 (2d Cir. 2010) (finding standing for discount retailer of Rocawear brand jeans to sue retailer selling counterfeit Rocawear jeans based on pecuniary stake arising out of potential impact to consumer confidence in the genuineness of plaintiff's Rocawear jeans); *Mutation Mink Breeders Assoc. v. Lou Nierenberg Corp.*, 23 F.R.D. 155, 161– 62 (S.D.N.Y. 1959) (finding standing for a trade association of mink sellers to sue a company producing and selling synthetic clothes with labels that misled consumers into believing the fabric was real mink, based on the trade association's "pecuniary interest in preventing the diversion of trade from its members," given that the trade association received a percentage of the members' sales).[18]

There is, however, no evidence to support such a conclusion in any event.  Plaintiff does not point to even one instance of a donor sending money to Baard that was intended for Plaintiff or the Boathouse.  In fact, Baard's website does not solicit, or provide any means for receiving,

---

[18] "Charities and nonprofit organizations are given the same protection against confusing use of their names as is given to business corporations.  The fact than an organization is non-profit and sells no goods does not take it out of the protection of the law of unfair competition."  McCarthy § 9.5.  The Lanham Act clearly applies to activities beyond the "traditional advertising campaign."  *See Gordon and Breach Science Publishers S.A. v. Am. Inst. of Physics*, 859 F. Supp. 1521, 1534–35 (S.D.N.Y. 1994) (collecting and discussing cases).  Section 43(a) has been found to apply to non-profit organizations, *Nat'l Artists Mgmt. Co. v. Weaving*, 769 F. Supp. 1224, 1232 (S.D.N.Y. 1991) (reading the statutory term "commercial" "to describe advertising or promotion for business purposes, whether conducted by for-profit or non-profit organizations"), and their fundraising letters, *Birthright v. Birthright, Inc.*, 827 F. Supp. 1114, 1138 (D.N.J. 1993) ("[Section 43(a) provides for liability for misrepresentations not only in commercial advertising but also in the 'promotion' of services.  The statements contained in fundraising letters about the services provided by a non-profit organization represent a promotion of those services.").

contributions.  *See* https://www.facebook.com/LICCommunityBoathouseFounder (last visited Nov. 7, 2013).[19]  Thus, the theoretical possibility that Plaintiff may be losing donations because of the alleged Trademark infringement is too speculative to give Plaintiff standing to sue.  This is particularly true given that Plaintiff seeks a permanent injunction.  *See, e.g.*, *MacIssac v. Town of Poughkeepsie*, 770 F. Supp. 2d 587, 593 (2d Cir. 2011) (to obtain a permanent injunction "a plaintiff must show that he has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical" and that "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision") (internal citations and quotations omitted).[20]

---

[19] Relatedly, although the Court need not reach the infringement issue at this time, the Court is not persuaded based on the evidence presented thus far that Baard's use of the URL "LICCommunityBoathouseFounder" causes customer confusion, or that Baard's Facebook page infringes on the Trademark, given that it no longer uses or displays the Boathouse logo.  Indeed, the most recent example of alleged confusion cited by Plaintiff—the December 4, 2013 *Daily News* article—indicates that the public, including the media, is not misled by Baard's Facebook page into believing that he is currently affiliated with or represents the Boathouse.  Even the Daily News reporter's comment on Baard's Facebook page, to which Gowanus Dredgers cites as clear evidence of confusion, does not suggest such confusion.  The reporter commented on Baard's page: "Hi.  I'm a reporter with the NY Daily News.  Please give me a call[.]"  (Dkt. 70-3 at 2.)  Nothing about the message indicates confusion.  Rather, it is likely that the reporter intended to speak specifically with Baard as the owner of the page because, after all, Baard is a litigant in this action.  Indeed, she did interview Baard for the article.  Clare Trapasso, *Gowanus Dredgers Canoe Club sues founder of Long Island Community Boathouse for trademark infringement*, New York Daily News, December 4, 2013, *available at* http://www.nydailynews.com/new-york/boathouse-founder-hot-water-article-1.1537942. Although the reporter *was* confused about what she styled in an email to Gowanus Dredgers as "the legal dispute between the Long Island City Community Boathouse and the Gowanus Dredgers" (Dkt. 70-2 at 1), nothing in Plaintiff's second supplemental submission indicates that this confusion was caused by Baard's Facebook page or otherwise by Baard.

[20] Plaintiff argues that it has established a presumption of irreparable harm by demonstrating a likelihood of customer confusion.  (Dkt. 58-5 at 7.)  Even assuming *arguendo* that Plaintiff has demonstrated customer confusion (*id.*; Dkt. 58-3 at 37-38), the presumption of irreparable harm invoked by Plaintiff only pertains to a preliminary injunction and not a permanent injunction such as that sought here.  *Compare Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70, 79 (2d Cir. 1988) (discussing presumption of irreparable harm), *with eBay Inc. v. MercExchange, L.L.C.*,

In sum, Plaintiff has failed to demonstrate that there is no genuine issue of fact regarding its standing to bring this infringement action, either as the owner of the Trademark, or as a non-owner that has a commercial interest or pecuniary stake in the Trademark.

III.     Plaintiff's Other Claims

The parties do not address Plaintiff's claims under New York law, and the Court declines to reach those issues not addressed by the parties.  Accordingly, Plaintiff's motion is denied as to its claims under common law unfair competition and New York's unfair competition statutes.

*CONCLUSION*

The evidence set forth by Plaintiff the Gowanus Dredgers establishes that Baard is not the owner of the Trademark, but does not establish that Plaintiff is the owner of the Trademark, that Plaintiff controls the assets of the Boathouse, thereby giving it control of the Trademark, or that Plaintiff has a sufficient commercial interest in the Trademark to give it standing to sue for its infringement.  Accordingly, the motion for summary judgment is denied.


SO ORDERED:


   /s/ Pamela K. Chen
PAMELA K. CHEN
United States District Judge


Dated: December 17, 2013
        Brooklyn, New York

---

547 U.S. 388, 391 (2006) (setting forth requirements for a permanent injunction).  Furthermore, the Second Circuit recently has indicated a departure from the presumption of irreparable harm in the preliminary injunction context in any event.  *Salinger v. Colting*, 607 F.3d 68, 78 n.7 (2d Cir. 2010) ("a court deciding whether to issue an injunction must not adopt 'categorical or 'general' rules or presume that a party has met an element of the injunction standard").